UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JASON SWINFORD | § | |
| | § | |
| VS. | § | |
| | § | Case No. 4:19-cv-02301 |
| COIL TUBING TECHNOLOGY, INC. and | § | |
| TOUCAN DOWNHOLE SOLUTIONS, LLC | § | |

## PLAINTIFF'S SUPPLEMENTAL BRIEF ON STANDING

Pursuant to the Court's Order of December 23, 2019 (Document 30; the "Order"), Plaintiff, Jason L. Swinford ("**Swinford**" or "**Plaintiff**") files this Supplemental Brief on Standing.

In its Order, the Court set a foundation from which the parties should concentrate their efforts: "Accordingly, this Court will resolve all disputed facts in this case concerning patent ownership." Further, "the Court [will] resolve disputed jurisdictional facts rather than a jury." In so stating, this Court took control of the patent ownership issue presently pending in state court.

The procedure for resolving standing

As the Court observed in the Order, resolving standing is "a procedural question not unique to patent law." *Madey v. Duke Univ.*, 307 F.3d 1351, 1358 (Fed. Cir. 2002). Determining standing is a three step analysis, two of which this Court has already taken.

In addition to the cases cited by the Court in its Order, *particularly DDB Techs., LLC v. MLB Advanced Media, L.P.* 517 F.3d 1284, 1291-92 (Fed. Cir. 2008), there is a helpful parallel in Texas jurisprudence which walks a court through a jurisdictional decision tree. *Texas Department of Parks and Wildlife v. Miranda*, 133 S.W.3d 217 (Tex. 2004) concerned sovereign immunity rather than patent ownership but the legal thought process is the same. In *Miranda*, the State of Texas filed a plea to the jurisdiction in which it asserted sovereign immunity which would deprive the trial court of jurisdiction. The Texas Supreme Court first ruled that jurisdiction is a question of

law which must be determined at the earliest opportunity. *Miranda*, 133 S.W.3d. at 226. This Court has already taken this first step by addressing standing and ruling that this is a question of law.

The second step under *Miranda* is to determine whether jurisdictional facts "also implicate the merits of the case." *Id.* If so, the Court may elect to "defer resolution of the jurisdictional issue until the time of trial." *Id.* The Court has already taken this second step. The Order reflects a determination that patent ownership does not present a situation where jurisdictional facts are significantly intertwined with facts underlying the merits of an infringement cause of action. (Order, page 2.) Accordingly, standing may be determined without having to hear the entire case.

This Court, then, is at *Miranda* step three: determining how to go about ruling on facts relating to patent ownership. In granting Defendants' motion, the Court appears to have concluded that an analysis under Fed.R.Civ.P 12(b)(1) is in order. The *Miranda* Court made the same determination, citing Rule 12(b)(1) and related United States Supreme Court case law as guidance. The *Miranda* Court stated that the trial court should inquire into the facts as they exist, by affidavits and pleadings. *Id.* at 227. "…[I]f the relevant evidence is undisputed or fails to raise a genuine issue of fact on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id*. at 228. "If the evidence creates a fact issue, the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Id*. at 227-228. "The trial court exercises its discretion in deciding whether the jurisdictional determination should be made at a preliminary hearing or await a fuller development of the case." *Id*. at 227.

Accordingly, at the February 14, 2020, hearing this Court should look at the evidence filed with the previous briefing, along with the pleadings. If patent ownership can be determined using this evidence, and thus standing, the Court should make such a determination. If the evidence demonstrates fact issues which cannot be resolved without more, the Court should conduct a separate bench trial on the issue of ownership.

At this point, the Court's options are to decide ownership with what it has, or conduct a bench trial on that sole issue if more evidence is required. The Plaintiff urges the Court to take live evidence at a bench trial. Defendant's claim of ownership is based primarily upon the credibility of its witnesses. "Testimonial evidence has the highest reliability because the credibility of the witness can be evaluated, and the factual issues narrowed by cross-examination." *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981) (quoting *Sanders v. Monsanto Co.*, 574 F.2d 198, 200 (5th Cir. 1978)).

As briefed in Plaintiff's Reply to Defendants' Response to Plaintiff's Motion for Preliminary Injunction (Document 21, paragraphs 3-19), Defendants' efforts to rebut Plaintiff's presumption of ownership are dependent on the Declarations of (a) Jeffry Chestnut, who testified by Declaration that he became CEO of CTT in August of 2016, long after the transaction the subject of this dispute (Document 8, at Exhibit 1 (Document 20, at Exhibit 1); (b) Herbert Pohlmann, who at all material times was the majority shareholder of CTT (Document 20, at Exhibit 11); and (c) John Brugger, who claims that now and during the material times, he was counsel to Mr. Pohlmann (Document 20, at Exhibit 10). As is evident from Mr. Chestnut's Declaration, his source of information is not his own personal knowledge, but rather his review of documents and his Declaration is a summary of those documents. As for the other two Declarants, Mr. Brugger and Mr. Pohlmann, there are credibility issues both with these particular witnesses, as well as the circumstances surrounding the execution of their Declarations. (Document 21, at Paragraphs 15-16 and Exhibit 15) *At best*, these credibility issues create a fact issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The Plaintiff has standing

The Plaintiff owns the subject patents. The patents are currently recorded in the United States Patent and Trademark Office in the Plaintiff's name. They are therefore presumed to be valid, and Plaintiff is the presumptive owner. (See discussion in document 9, Response to Motion

To Dismiss for Lack of Standing, paragraphs 38-41.) The presumption of ownership is rebuttable, so the burden is upon the Defendants to disprove Plaintiff's ownership.

In addition to the evidence and argument already before this Court, additional evidence corroborates Plaintiff's ownership of the patents, including that CTT not only failed to amend nor correct its earlier SEC filings disclosing the $3.75 million dollar payment obligation to Jerry Swinford, which is secured by a security interest in all of CTT's assets (including the patents-in-suit), and that a remedy for nonpayment includes Jerry Swinford's right to transfer title to those patents to himself, or his designee (in this instance, the Plaintiff), at pgs. 28, F-10, 30, 31, 33, 40, 41, 45 to Exhibit "E" to Doc. 11, Plaintiff's Substitute Response and Opposition to Defendants' Motion for Dismiss (CTT's 2015 10-K); and also that it continued to make such disclosure even after Jerry and Jason Swinford left CTT, and had already filed suit for breach of the payment obligation. The relevant Interrogatory, and Response follows:

> **Interrogatory No. 4:** Please identify each update or correction of any prior statement, disclosure or report filed, transmitted or provided to the Securities Exchange Commission, from 2014 to the present date, for on or behalf of CTT.
>
> **Response:** Objection, overly broad and unduly burdensome to the extent it is not limited in scope to updates or corrections related to Plaintiff's ownership of the patents-in-suit and/or his standing to sue; misleading to the extent the interrogatory implies that CTT had or has any such duty to update or correct any prior statement, disclosure, or report.
>
> Subject to and without waiving the foregoing objections, and pursuant to Fed. R. Civ. P. 33(d), CTT directs Plaintiff to documents produced at CTT002348-2435, from which responsive information can be derived or ascertained by Plaintiff with a burden substantially the same as that on CTT. CTT did not submit any statements, disclosures, or reports to the Securities and Exchange Commission after March 16, 2016.

A true and correct copy of the Response is attached as Exhibit 1, hereto (emphasis supplied), and CTT002357-2435 is attached as Exhibit 2 (emphasis supplied). At CTT002355 (CTT's January 8, 2016 SEC filing), incorporated into CTT's response to Interrogatory 4, CTT again disclosed to shareholders and the public the secured $3.75 million dollar obligation to Jerry Swinford:

> On March 25, 2015, and effective in December 2014, the Company entered into an Intellectual Property Purchase Agreement (the "2015 IP Purchase Agreement") with Jerry Swinford, the Company's Executive Vice President and Chairman. Pursuant to the 2015 IP Purchase Agreement, the Company agreed to purchase additional patents and pending patents owned and held by Mr. Swinford for $3,750,000, in the form of a promissory note payable to Mr. Swinford (the "2015 Swinford Note"). The

> Company obtained an independent valuation in order to determine the value of the patents. The 2015 Swinford Note is due January 1, 2018, together with interest at the rate of 3% per annum with monthly installments of $15,810 due commencing on January 1, 2017. The 2015 Swinford Note can be prepaid earlier without penalty. The Company also agreed to grant Mr. Swinford a security interest in all of the assets acquired by the Company in order to secure the repayment of the 2015 Swinford Note. Holdings, its subsidiaries and Excel Inspection, LLC also agreed, pursuant to a Guaranty, to guaranty the repayment of the 2015 Swinford Note.

Ex. 2. In addition, at CTT002357, CTT disclosed Jerry Swinford's lawsuit against CTT, for breach of the $3.75 million dollar payment obligation:

> On August 14, 2015, Jerry Swinford and Jason Swinford, our sole officers and directors, filed suit against John N. Brugger and the Company. The case is currently styled Cause No. 2015-58884, *Jerry Swinford and Jason Swinford v. Coil Tubing Technology, Inc. and John N. Brugger*, In the 164th Judicial District Court of Harris County Texas (the "Litigation"). The Litigation sought damages against John N. Brugger for defamation, disparagement and libel; an injunction to preserve the status quo of the operations of the Company; and damages against the Company for an alleged breach of contract in the non-payment to Jerry Swinford for the purchase of several patents under the 2015 IP Purchase Agreement as described above. The Company agreed to the injunction to preserve the status quo of the business operations of the Company. The Company through its legal counsel, filed an answer to the breach of contract claims denying Jerry Swinford's allegations. Additionally, on November 10, 2015, Herbert C. Pohlmann, Jr., Richard Dear, Filippo Mastrocola, Maryann Bethel, John N. Brugger, as Trustee of the Juliane S. Callis 2012 Irrevocable Family Dynasty Trust, and John N. Brugger, as Trustee of the Jennifer K. Landis 2012 Irrevocable Family Dynasty Trust ("Interventionists"), each stockholders of the Company, filed a petition in intervention in the Litigation. The Interventionists allege fraud and a breach of fiduciary duty as to Jerry Swinford and Jason Swinford and aiding and abetting in the breach of fiduciary duty as to the Company. In addition to a general plea for monetary damages in excess of $1,000,000, the Interventionists appear to be making a claim that the Company, and not Jerry Swinford, owns all or most of the patents free and clear of any monetary obligation. The Company intends to vigorously defend itself against the allegations of Jerry Swinford, Jason Swinford and the Interventionists and discovery has just begun in the case. The possibility of loss cannot be determined at this early date without further discovery.

Ex. 2. And, at CTT002374, CTT disclosed that at the time of its January 8, 2016 filing, Jerry Swinford and Jason Swinford were no longer employed by CTT.

> **Item 5.02 Departure of Directors or Certain Officers; Election of Directors; Appointment of Certain Officers; Compensatory Arrangements of Certain Officers.**
>
> On and effective December 31, 2015, Jason and Jerry Swinford resigned from all positions which they held with Coil Tubing Technology, Inc. ("Coil Tubing") and its subsidiaries. In connection therewith, Jason Swinford resigned as Chief Executive Officer and director of Coil Tubing and Jerry Swinford resigned as Executive Vice President, Secretary, Treasurer and director of Coil Tubing. As a result of such resignations, Richard R. Royall, Chief Financial Officer, is the sole officer of Coil Tubing.
>
> Coil Tubing intends to conduct a search to fill the vacancies created by the resignations described above.

\*\*\*

> **SIGNATURES**
>
> Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this Report to be signed on its behalf by the undersigned, hereunto duly authorized.
>
> COIL TUBING TECHNOLOGY, INC.
>
> Date: January 8, 2016
>
> By: /s/ *Richard R. Royall*
> Richard R. Royall
> Chief Financial Officer

Ex. 2. The only subsequent filing, CTT002376, which also is incorporated into CTT's response to Interrogatory 4, (CTT's March 16, 2016 filing), CTT discloses only that it lacks financial resources.

> **Item 8.01 Other Events.**
>
> The registrant, Coil Tubing Technology, Inc., is referred to herein as "we" or "our".
>
> Due to a lack of financial resources, we will be unable to continue to file the required annual and quarterly filings, including but not limited to, our annual Form 10-K for the year ended December 31, 2015 and subsequent Form 10Q's for the quarterly reporting periods commencing March 31, 2016.
>
> **SIGNATURES**
>
> Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this Report to be signed on its behalf by the undersigned, hereunto duly authorized.
>
> COIL TUBING TECHNOLOGY, INC.
>
> Date: March 16, 2016    By: /s/ Richard R. Royall
>    Richard R. Royall
>    Chief Financial Officer

Ex. 2.

The purpose of reports filed with the SEC is to disclose to shareholders and the public specified material changes in financial condition or method of operation. The SEC imposes civil penalties for filing a false or misleading record, 17 CFR § 240.13b2–1; 17 CFR § 240.13b2–2; including for failing to disclose that an earlier disclosed transaction or disposition of assets was not consummated. *S.E.C. v. Jorissen*, 470 F. Supp. 2d 764, 770 (E.D. Mich. 2007). This Court should presume then that the information disclosed by CTT, as set forth in Exhibit "E" to Document 11, and as set forth in CTT's production at CTT2355, 2357, and 2376, is accurate.

Plaintiff has more than the presumption supporting his ownership. The Plaintiff relies upon the pleadings and attached evidence found under the Response to Motion To Dismiss for Lack of Standing (Doc. 9), Plaintiff's Substitute Response and Opposition to Defendants' Motion to Dismiss (Doc. 11), Motion for Preliminary Injunction (Doc. 19), Reply to Defendants' Response in Opposition to Plaintiff's Motion for Preliminary Injunction (Doc. 21). The Plaintiff and his witnesses will testify in support of his standing at an evidentiary hearing if that is the Court's choice, or will stand on the record as it presently appears.

Respectfully submitted,

HIRSCH & WESTHEIMER, P.C.

By: */s/ Eric Lipper*
    Eric Lipper
    State Bar No. 12399000
    Federal Id. 11442
    Melissa Nicholson Sternfels
    State Bar No. 24037181
    Federal Id. 38294
    1415 Louisiana, 36th Floor
    Houston, Texas 77002
    Telephone: 713.220.9181
    Facsimile: 713.223.9319
    Email: elipper@hirschwest.com
    Email: msternfels@hirschwest.com

**ATTORNEYS FOR PLAINTIFF,
JASON L. SWINFORD**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of February, 2020, a true and correct copy of the foregoing and/or attached was served on each attorney of record or party in accordance with **Federal Rule of Civil Procedure 5(b)** as follows:

D. John Neese, Jr. Andrew K. Meade Holly H. Barnes
2118 Smith Street
Houston, Texas 77002
Phone (713) 355-1200
jneese@meadeneese.com
ameade@meadeneese.com
hbarnes@meadeneese.com
**Attorneys for Defendants
Via ECF**

/s/ Eric Lipper
Eric Lipper